**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 94-50083
_____

CHERYL J. HOPWOOD, ET AL.,

Plaintiffs-Appellees,

VERSUS

STATE OF TEXAS, ET AL.,

Defendants-Appellees,

VERSUS

THURGOOD MARSHALL LEGAL SOCIETY
and BLACK PRE-LAW ASSOCIATION,

Movants-Appellants.

*****************************************************

DOUGLAS CARVELL, ET AL,

Plaintiffs-Appellees,

VERSUS

STATE OF TEXAS, ET AL.,

Defendants-Appellees,

VERSUS

THURGOOD MARSHALL LEGAL SOCIETY,
and BLACK PRE-LAW ASSOCIATION,

Movants-Appellants.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
(May 11, 1994)

Before POLITZ, Chief Judge, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

Appellants, Thurgood Marshall Legal Society (TMLS) and Black Pre-Law Association (BPLA) appeal the order of the district court denying their motion to intervene in this action.  We affirm.

I.

Since 1983, Texas has implemented an affirmative action policy in its higher education system, a component of which is a race conscious admissions policy for the University of Texas School of Law (Law School).  On September 29, 1992, two unsuccessful white applicants to the Law School filed a lawsuit challenging the admissions policy as racially discriminatory.[1]  Named as defendants were the State of Texas, the Board of Regents of the Texas State University System, the Law School, and a number of individuals in their official capacities.  Although the parties commenced limited discovery, the parties' focus was a dispute over standing and ripeness.  This dispute was finally resolved on October 28, 1993, when the district court denied defendants' motion for summary judgment on standing and ripeness grounds.  On November 18, 1993, the district court set the following deadlines:  March 11, 1994 for a final pretrial conference; April 1, 1994, for completion of discovery; April 15, 1994 for filing of a joint pretrial order.

On January 5, 1994, the TMLS and BPLA moved for intervention of right and permissive intervention.  The proposed intervenors argued that they had an interest in the existing admissions policy and in the elimination of the vestiges of past discrimination in the Law School's admissions policy.  The state defendants did not

_____

[1]  The lawsuit was brought under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

2

oppose intervention, but the plaintiffs did.  Without conducting a hearing, the district court denied intervention of right, ruling that the state defendants adequately represented TMLS and BPLA's interests.  The district court also denied permissive intervention, reasoning that it would "needlessly increase cost and delay disposition of the litigation."  TMLS and BPLA promptly appealed.

II.

In order to intervene as of right under Fed. R. Civ. P. 24(a),[2] the proposed intervenor must demonstrate 1) that it has an interest in the subject matter of the action, 2) that disposition of the action may practically impair or impede the movant's ability to protect that interest, and 3) that the interest is not adequately represented by the existing parties. **Diaz v. Southern Drilling Corp.**, 427 F.2d 1118, 1124 (5th Cir.), **cert. denied**, 400 U.S. 878 (1970). The application must also be timely under the circumstances. **Stallworth v. Monsanto Co.**, 558 F.2d 257, 263 (5th Cir. 1977).

A. Adequacy of Representation

The district court held that BPLA and TMLS failed to demonstrate that the state did not adequately represent their interests. The district court reached this conclusion principally because the petitioners' ultimate objective was the same as the State's: to defend the affirmative action program.

The BPLA and TMLS contend that the State cannot adequately represent their interest because 1) the long history of discrimination against African-Americans by the State weighs against the State's willingness to vigorously represent the interests of the African-American students; 2) the State's

---

[2] Rule 24(a) states that
[U]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

4

interests are broader in that they must balance the interests of the African-American students against other students as well as balancing educational goals, fiscal responsibility, administrative concerns and public opinion; while the petitioners' only interest is in preserving an admissions policy that remedies the past effects of discrimination and fosters an atmosphere that is receptive to African-American students, and 3) the petitioners are in a better position to present evidence of recent discrimination.

The proposed intervenors have the burden of demonstrating inadequate representation. The Supreme Court held in 1972 that the burden is "minimal" and that the requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate ..." **Trbovich v. United Mine Workers**, 404 U.S. 528, 538 n.10 (1972). But where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required. **See** 7C Charles A. Wright and Arthur R. Miller, **Federal Practice & Procedure** § 1909 (1986). In a suit involving a matter of sovereign interest, the State is presumed to represent the interests of all of its citizens. **New Orleans Public Service v. United Gas Pipe Line Co.**, 690 F.2d 1203, 1213 n.7 (5th Cir. 1982), **cert. denied**, 469 U.S. 1019 (1984); **Environmental Defense Fund, Inc. v. Higginson**, 631 F.2d 738, 740 (D.C.Cir. 1979). Because Texas is already a party, "the applicant for intervention must demonstrate that its interest is in fact different from that of the state and that the interest will not be represented by the state." **EDF** at 740. **See also**, **Mille Lacs Band of Chippewa Indians v. Minnesota**, 989 F.2d 994 (8th Cir. 1993).

5

The BPLA and TMLS argue that they have met their burden of showing that their interests are different from the State's. They contend that the State must balance competing goals while they are sharply focused on preserving the admissions policy. Moreover, they argue that because of its competing goals, the State is not in as good a position to bring in evidence of present effects of past discrimination and current discrimination.

In order to justify an affirmative action program, the State must show that there are "present effects of past discrimination." **Wygant v. Jackson Bd. of Educ**., 476 U.S. 267 (1986); **Podberesky v. Kirwan**, 956 F.2d 52, 57 (4th Cir. 1992). Although the BPLA and TMLS may have ready access to more evidence than the State, we see no reason they cannot provide this evidence to the State. The BPLA and the TMLS have been authorized to act as amicus and we see no indication that the State would not welcome their assistance. BPLA and TMLS have not met their burden of demonstrating that they have a separate interest that the State will not adequately represent. The proposed intervenors have not demonstrated that the State will not strongly defend its affirmative action program. Nor have the proposed intervenors shown that they have a separate defense of the affirmative action plan that the State has failed to assert. **See, Jansen v. Cincinnati**, 904 F.2d 336 (6th Cir. 1990).

### B. Permissive Intervention

In its January 1994 order, the district court also denied the prospective intervenors' motion to intervene pursuant to Rule

6

24(b), Fed. R. Civ. P.[3]  Specifically, Judge Sparks held that the proposed intervenors' interests were adequately being represented by the defendants in the case and that adding them to the lawsuit would needlessly increase costs and delay disposition of the litigation.

Intervention under Rule 24(b) is left to the sound discretion of the district court, and this court has jurisdiction only if the district court has abused its discretion.  **E.G., Woolen v. Surtran Taxicabs, Inc.**, 684 F.2d 324, 330 (5th Cir. 1982) ("the denial of amotion for permissive intervention under Rule 24(b) is not appealable unless there is an abuse of discretion").  As we have noted, we have never reversed a lower court's decision on Rule 24(b) intervention.  **E.g., Kneeland v. Nat'l Collegiate Athletic Ass'n**, 806 F.2d 1285, 1289-90 (5th Cir. 1987); **Doe v. Duncanville Independent School District**, 994 F.2d 160, 168 n.10 (5th Cir. 1993).  The district court plainly did not abuse its discretion in denying petitioners' Rule 24(b) application to intervene.

AFFIRMED.

---

[3]    Rule 24(b) states that

[U]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . .. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

7