188 F.3d 394 (6th Cir. 1999)
 Barbara Grutter, for herself and all others similarly situated, Plaintiffs-Appellees, 98-2009
v.
Lee Bollinger, et al., Defendants,
Kimberly James, et al., Proposed Intervening Defendants-Appellants,
Jennifer Gratz, Patrick Hamacher, and all others similarly situated, Plaintiffs-Appellees,
v.
Lee Bollinger, et al., Defendants,
Ebony Patterson, et al., Proposed Intervening Defendants-Appellants.
 Nos. 98-2009, 98-2248
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: June 8, 1999
Decided and Filed: August 10, 1999
 
 Appeal from the United States District Court for the Eastern District of Michigan at Detroit, Nos. 97-75928; 97-75231--Bernard A. Friedman; Patrick J. Duggan, District Judges[Copyrighted Material Omitted]
 Kerry L. Morgan, Taylor, MI, David F. Herr, Kirk O. Kolbo, Maslon, Edelman, Bormand & Brand, Minneapolis, MN, Michael E. Rosman, Center for Individual Rights, Washington, D.C., for Plaintiffs-Appellees.
 Leonard M. Niehoff, Butzel Long, Detroit, MI, John Payton, Wilmer, Cutler & Pickering, Washington, D.C., for Defendants-Appellees, Bollinger, Duderstadt, University of Michigan, University of Michigan College of Literature, Arts and Science.
 Reginald M. Turner, Jr., SACHS, NUNN, KATES, KADUSHIN, O'HARE, HELVESTON & WALDMAN, Detroit, Michigan, Philip J. Kessler, Butzel Long, Detroit, MI, Theodore M. Shaw, Olatunde C.A. Johnson, NAACP LEGAL DEFENSE & EDUCATIONAL FUND, New York, New York, Godfrey J. Dillard, EVANS & LUPTAK, Detroit, Michigan, Christopher A. Hansen, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, Leonard M. Niehoff, Butzel Long, Ann Arbor, MI, Milton R. Henry, Bloomfield Hills, Michigan, Brent E. Simmons, ACLU FUND OF MICHIGAN, Lansing, Michigan, Michael J. Steinberg, ACLU FUND OF MICHIGAN, Detroit, Michigan, Patricia Mendoza, MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND, Chicago, Illinois, Amalia S. Rioja, Mexican American Legal Defense and Educational Fund, Chicago, IL, for Proposed Intervening Defendants-Appellants.
 Philip J. Kessler, Butzel Long, Detroit, MI, John Payton, Wilmer, Cutler & Pickering, Washington, D.C., Leonard M. Niehoff, Butzel Long, Ann Arbor, MI, for Defendant Bollinger.
 George B. Washington, Miranda K.S. Massie, SCHEFF & WASHINGTON, Detroit, Michigan, for Movants-Appellants.
 Before: DAUGHTREY and MOORE, Circuit Judges; STAFFORD*, District Judge.
 DAUGHTREY, J., delivered the opinion of the court, in which MOORE, J., joined. STAFFORD, D. J. (p. 401), delivered a separate dissenting opinion.
 OPINION
 MARTHA CRAIG DAUGHTREY, Circuit Judge.
 
 
 1
 Before us are two cases in which proposed defendant-intervenors were denied intervention under Federal Rule of Civil Procedure 24(a) and (b), in actions brought against the University of Michigan contesting the use of an applicant's race as a factor in determining admission. The appeals come from separate district courts but present similar, and in some instances the same, issues for our consideration. We have therefore consolidated the two cases for purposes of this opinion, and we find in both instances that the district courts erred in denying intervention under Rule 24(a).
 
 PROCEDURAL AND FACTUAL BACKGROUND
 
 2
 In each of the cases before the court, a group of students and one or more coalitions appeal the denial of their motion to intervene in a lawsuit brought to challenge a race-conscious admissions policy at the University of Michigan. The named plaintiffs in Gratz v. Bollinger are two white applicants who were denied admission to the College of Literature, Arts and Science.They allege that the College's admissions policy violates the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. 1981 and 1983, and 42 U.S.C. 2000d et seq. The plaintiffs seek compensatory and punitive damages, injunctive relief forbidding continuation of the alleged discriminatory admissions process, and admission to the College. The intervenors are 17 African-American and Latino/a individuals who have applied or intend to apply to the University, and the Citizens for Affirmative Action's Preservation (CAAP), a nonprofit organization whose stated mission is to preserve opportunities in higher education for African-American and Latino/a students in Michigan. The intervenors claim that the resolution of this case directly threatens the access of qualified African-American and Latino/a students to public higher education and that the University will not adequately represent their interest in educational opportunity. The district court denied their motion for intervention as of right, holding that the plaintiffs did not have a substantial interest in the litigation and that the University could adequately represent the proposed intervenors' interests. The district court also denied the proposed intervenors' alternative motion for permissive intervention.
 
 
 3
 The named plaintiff in Grutter v. Bollinger is a white woman challenging the admissions policy of the University of Michigan Law School. Like the plaintiffs in Gratz, she alleges that the race-conscious admissions policy utilized by the law school violates the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. 1981 and 1983, and 42 U.S.C. 2000d et seq. Grutter seeks compensatory and punitive damages, injunctive relief forbidding continuation of the alleged discriminatory admissions process, and admission to the law school. The proposed intervenors are 41 students and three pro-affirmative action coalitions. As described by the district court:
 
 
 4
 [The] individual proposed intervenors include 21 undergraduate students of various races who currently attend [various undergraduate institutions], all of whom plan to apply to the law school for admission; five black students who currently attend [local high schools] and who also plan to apply to the law school for admission; 12 students of various races who currently attend the law school; a paralegal and a Latino graduate student at the University of Texas at Austin who intend to apply to the law school for admission; and a black graduate student at the University of Michigan who is a member of the Defend Affirmative Action Party.
 
 
 5
 The plaintiff opposed the motion to intervene, but the defendants, various officials of the Law School and the University, did not oppose the motion. The district court denied the motion to intervene as of right on the basis that the intervenors failed to show that their interests would not be adequately represented by the University. The district court also denied the proposed intervenors' alternative motion for permissive intervention.
 
 DISCUSSION
 
 6
 The proposed intervenors in each of these cases contend principally that the district court erred by denying their motion to intervene as of right. Fed. R. Civ. P. 24 provides in pertinent part:
 
 
 7
 Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 8
 In this circuit, proposed intervenors must establish four elements in order to be entitled to intervene as a matter of right: (1) that the motion to intervene was timely;(2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest. See Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990). A district court's denial of intervention as of right is reviewed de novo, except for the timeliness element, which is reviewed for an abuse of discretion. Id. The district court held in each of these cases that the motion for intervention was timely, and the plaintiffs do not contest this finding on appeal. We will therefore consider the motions timely and need address only the three remaining elements.
 
 Substantial Legal Interest
 
 9
 The proposed intervenors must show that they have a substantial interest in the subject matter of this litigation. See Jansen, 904 F.2d at 341. However, in this circuit we subscribe to a "rather expansive notion of the interest sufficient to invoke intervention of right." Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997). For example, an intervenor need not have the same standing necessary to initiate a lawsuit. See id.; Purnell v. City of Akron, 925 F.2d 941, 948 (6th Cir. 1991). We have also "cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" Miller, 103 F. 3d at 1245 (quoting Purnell, 925 F.2d at 948). "The inquiry into the substantiality of the claimed interest is necessarily fact-specific." Id.
 
 
 10
 The proposed intervenors argue that their interest in maintaining the use of race as a factor in the University's admissions program is a sufficient substantial legal interest to support intervention as of right. Specifically, they argue that they have a substantial legal interest in educational opportunity, which requires preserving access to the University for African-American and Latino/a students and preventing a decline in the enrollment of African-American and Latino/a students. The district court in Grutter "assumed without deciding" that the proposed intervenors do have a significant legal interest in this case and that their ability to protect that interest may be impaired by an adverse ruling in the underlying case. The district court in Gratz, however, determined that the proposed intervenors did not have a direct and substantial interest which is "legally protectable" and that they therefore failed to establish this required element. We conclude that Sixth Circuit precedent requires a finding to the contrary.
 
 
 11
 In Jansen, 904 F.2d at 338-39, black applicants and employees of the city's fire department sought to intervene in a reverse discrimination lawsuit challenging the department's use of a quota system. We noted that the proposed intervenors were parties to an earlier consent decree setting goals for minority hiring and found that the proposed intervenors did have a significantly protectable interest in the affirmative action challenged in the lawsuit. See id. at 342. The district court in Gratz distinguished Jansen, as well as In re Birmingham Reverse Discrimination Employment Litig., 833 F.2d 1492 (11th Cir. 1987), aff'd sub. nom., Martin v. Wilks, 490 U.S. 755 (1989), on which this court relied in Jansen, on the basis that the proposed intervenors in both Jansen and In re Birmingham had a legally protected interest only by virtue of their status as parties to a consent decree. As the proposed intervenors point out, however, neither Jansen nor In re Birmingham stands for the proposition that an interest must be protected by means of a consent decree or by any other particular means in order for the proposed intervenors to be able to establish that they have a substantial legal interest.
 
 
 12
 The Gratz district court's opinion relies heavily on the premise that the proposed intervenors do not have a significantlegal interest unless they have a "legally enforceable right to have the existing admissions policy construed." We conclude that this interpretation results from a misreading of this circuit's approach to the issue. As noted earlier, we have repeatedly "cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" Miller, 103 F. 3d at 1245; see also Purnell, 925 F.2d at 948. For example, in Miller, the Michigan Chamber of Commerce sought to intervene in a suit by labor unions challenging an amendment to Michigan's Campaign Finance Act, Mich. Comp. Laws Ann. 169.201-.282 (1996), which extended the application of statutory restrictions on corporate political expenditures so that they applied to unions as well as to corporations. See id. at 1243-44. The majority found that the Chamber of Commerce did have a substantial legal interest by virtue of its role in the political process that resulted in the adoption of the contested amendments. Id. at 1247. The Chamber of Commerce was therefore allowed to intervene as of right, although the Chamber had no legal "right" to the enactment of the challenged legislation. We believe that the district court's attempt to distinguish Miller, as well as Meek v. Metropolitan Dade County, 985 F.2d 1471 (11th Cir. 1993) (holding that voters and organizations were entitled to intervene in action by African-American and Latino citizens against the county for violation of Voting Rights Act) and Citizens for Legislative Choice v. Miller, No. 97-CV-73777-DT (E.D. Mich. Oct. 15, 1997) (holding that organization was entitled to intervene in action challenging constitutionality of term limits provision for which it had lobbied), on the sole basis that those cases involved challenges to legislation, was misguided. The case law of this circuit does not limit the finding of a substantial interest to cases involving the legislative context, any more than it limits such a finding to cases involving a consent decree. Neither a legislative context nor the existence of a consent decree is dispositive as to whether proposed intervenors have shown that they have a significant interest in the subject matter of the underlying case. We find that the interest implicated in the case now before us is even more direct, substantial, and compelling than the general interest of an organization in vindicating legislation that it had previously supported. This case is, if anything, a significantly stronger case for intervention than Miller and many of the cases on which Miller relied.
 
 
 13
 Even if it could be said that the question raised is a close one, "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." Miller, 103 F.3d at 1247. The proposed intervenors have enunciated a specific interest in the subject matter of this case, namely their interest in gaining admission to the University, which is considerably more direct and substantial than the interest of the Chamber of Commerce in Miller -- a much more general interest. We therefore hold that the district court erred in Gratz in failing to rule that the proposed intervenors have established that they have a substantial legal interest in the subject matter of this case.
 
 Impairment
 
 14
 "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden in minimal." Miller, 103 F.3d at 1247 (citing Purnell, 925 F.2d at 948). As noted above, the district court in Grutter "assumed without deciding" that the proposed intervenors met this element. The district court in Gratz, however, determined that because "the proposed intervenors [] failed to articulate the existence of a substantial legal interest in the subject matter of the instant litigation, it necessarily follows that the proposed intervenors cannot demonstrate an impairment of any interest." The proposed intervenors in Gratz continue to argue on appeal that a decisionin favor of the plaintiff will adversely affect their interest in educational opportunity by diminishing their likelihood of obtaining admission to the University and by reducing the number of African-American and Latino/a students at the University.
 
 
 15
 As we have now decided, the district court erred in determining that the proposed intervenors did not have a substantial interest in the subject matter of this case. Consequently, we must likewise conclude that the district court erred in its analysis of the impairment element as well. There is little room for doubt that access to the University for African-American and Latino/a students will be impaired to some extent and that a substantial decline in the enrollment of these students may well result if the University is precluded from considering race as a factor in admissions. Recent experiences in California and Texas suggest such an outcome. The probability of similar effects in Michigan is more than sufficient to meet the minimal requirements of the impairment element.
 
 Inadequate Representation
 
 16
 Finally, the prospective intervenors must show that the existing defendant, the University, may not adequately represent their interests. However, the proposed intervenors are "not required to show that the representation will in fact be inadequate." Miller, 103 F.3d at 1247. Indeed, "[i]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." Id.
 
 
 17
 As a preliminary matter, there is some dispute about the relevant standard for determining whether this element has been met when the existing defendant is a governmental entity. The district court in Gratz mentioned that the plaintiff relied on Hopwood v. State of Texas, 21 F.3d 603 (5th Cir. 1994), for the proposition that a stronger showing of inadequacy is required when a governmental agency is involved as the existing defendant. On reconsideration, however, the district court made clear that it had simply noted the plaintiff's argument in regard to the higher Hopwood standard but had not applied this higher standard. In Grutter, by contrast, the district court does appear to have applied the more demanding Hopwood standard. However, this circuit has declined to endorse a higher standard for inadequacy when a governmental entity in involved. For example, in Miller, where the defendants included the Secretary of State and the Attorney General, this court clearly stated that the proposed intervenors were required only to show that the representation might be inadequate. See Miller, 103 F.3d at 1247. The district court in Grutter therefore erred in applying the higher standard articulated by the Fifth Circuit in Hopwood.
 
 
 18
 The proposed intervenors insist that there is indeed a possibility that the University will inadequately represent their interests, because the University is subject to internal and external institutional pressures that may prevent it from articulating some of the defenses of affirmative action that the proposed intervenors intend to present. They also argue that the University is at less risk of harm than the applicants if it loses this case and, thus, that the University may not defend the case as vigorously as will the proposed intervenors. The district court in Gratz, however, found that the proposed intervenors did not identify any specific separate or additional defenses that they will present that the University will not present. The district court in Grutter also found that the proposed intervenors failed to show that the University would not adequately represent their interests.
 
 
 19
 We conclude that the district court erred in each of these cases. The Supreme Court has held, and we have reiterated, that the proposed intervenors' burden in showing inadequacy is "minimal." See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972); Linton v. Commissioner of Health & Env't., 973 F.2d 1311, 1319 (6th Cir. 1992). The proposed intervenors need show only that there is a potential for inadequate representation.See id. The proposed intervenors in these two cases have presented legitimate and reasonable concerns about whether the University will present particular defenses of the contested race-conscious admissions policies. We find persuasive their argument that the University is unlikely to present evidence of past discrimination by the University itself or of the disparate impact of some current admissions criteria, and that these may be important and relevant factors in determining the legality of a race-conscious admissions policy. We must therefore conclude that the proposed intervenors have articulated specific relevant defenses that the University may not present and, as a consequence, have established the possibility of inadequate representation.
 
 CONCLUSION
 
 20
 For the reasons set out above, we find that the proposed intervenors have shown that they have a substantial legal interest in the subject matter of this matter, that this interest will be impaired by an adverse determination, and that the existing defendant, the University, may not adequately represent their interest. Hence, the proposed intervenors are entitled to intervene as of right and the district court's decision in each of these cases denying the motion for intervention as of right cannot be sustained. While this determination renders moot the question of permissive intervention under Rule 24(b), we do not believe that the denial of intervention on a permissive basis was erroneous.
 
 
 21
 The order of the district court in each case denying intervention is REVERSED and the cases are REMANDED for entry of an order permitting intervention by the proposed defendant-intervenors under Rule 24(a). The order previously entered in this court staying proceedings in the district courts is hereby VACATED.
 
 DISSENT
 
 22
 WILLIAM STAFFORD, District Judge, dissenting.
 
 
 23
 I cannot agree that the proposed intervenors in these cases have established their right to intervene as of right. I do not believe, nor do I think Michigan State AFL-CIO v. Miller, 103 F.3d 1240 (6th Cir. 1997), compels us to find, that the proposed intervenors' subjective fears are sufficient to satisfy their burden, however minimal, of showing that the University of Michigan will not adequately represent the proposed intervenors' interests in these two lawsuits. Unlike the State of Michigan in Miller, the University of Michigan here has in no way "demonstrated that it will not adequately represent and protect the interests held by the [proposed intervenors]." Miller, 103 F.3d at 1248. There is nothing in the record of either case to suggest that the University of Michigan will not zealously defend its voluntarily-adopted admissions policies, will not present all relevant evidence in support of its admissions policies, will not resist unspecified pressures that could temper its ability to defend its admissions policies, or will not raise all defenses or make all arguments that the prospective intervenors may raise or make. Because I do not think that we should substitute our judgment for the informed judgment of the two respective trial judges who determined that, based on the record before them, intervention was not merited, I must respectfully dissent.
 
 
 
 Notes:
 
 
 *
 The Honorable William H. Stafford, United States District Judge for the Northern District of Florida, sitting by designation.